**SO ORDERED.**

**SIGNED this 25 day of January, 2007.**



_____
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re: ) | |
| ) | |
| WALTER H. HUBBARD and ) | |
| MARGARET E. HUBBARD, ) | Case No. 05-10343 |
| ) | Chapter 12 |
| Debtors. ) | |
| _____) | |

### MEMORANDUM AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT FILED BY INTERNAL REVENUE SERVICE AND REQUIRING FILING OF AMENDED CHAPTER 12 PLAN

This matter is before the Court on the Motion for Summary Judgment filed on behalf of the United States of America.[1] At issue is whether the Internal Revenue Service's secured claim arising from the tax year 1992 is barred by the 10-year statute of limitations. The parties have fully briefed this matter and the Court is now ready to rule.

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (L).

---

[1]Doc. 116.

## I. FINDINGS OF FACT

The Court makes the following findings of fact based upon the briefs submitted in regard to this motion for summary judgment.

On June 7, 1993, the Internal Revenue Service ("IRS") assessed the tax liability for the Debtors' return for tax period ending December 31, 1992. On August 8, 2000, the IRS accepted for processing the Debtors' Offer in Compromise ("OIC") regarding payment of income tax years 1988, 1989, 1990, 1992, 1994, and 1995 which was returned to Debtors on October 16, 2000. On October 25, 2000, the debtors resubmitted the OIC which the IRS signed for and accepted for processing that same day. The OIC was rejected by the IRS on January 19, 2001.

According to the affidavit submitted by Carolea Rayl, who is a Revenue Officer Aid for the IRS, the Debtors appealed of the rejection of the OIC on January 31, 2001 by submitting a letter to the IRS requesting an appeal, as required by the original rejection letter they received. Also according to Ms. Rayl's affidavit, that appeal was rejected by the IRS on January 15, 2004. Ms. Rayl's affidavit is supported by a copy of a letter dated January 31, 2001 written to the IRS by Stan M. Kenny on behalf of the Debtors which states "this letter is to inform you on behalf of my clients, Walter H. And Margaret E. Hubbard, that we hereby protest your findings and request an appeal of your findings to the Appeals Office," as well as a copy of a letter dated January 15, 2004 from Greg Shaw, Appeals Team Manager with the IRS Wichita Appeals Office, to the Debtors indicating that the OIC has again been rejected.

The Debtors deny that an appeal was ever filed following the January 19, 2001 rejection of the OIC. The Debtors support this denial by indicating that no appeal is noted on the IRS transcript received by Debtors' counsel on March 22, 2006. The Debtors contend that the lack of notation of

2

the appeal on the tax transcript amounts to an admission by the IRS that no appeal was ever received, accepted, process or rejected. The Debtors provide no other evidence, by way of affidavit or otherwise, to support their contention that they did not appeal the rejection of the OIC.

The IRS has three federal tax liens on file with the Finney County, Kansas, Register of Deeds, against the Debtors' property. The first Notice of Federal Tax Lien was recorded August 12, 1993, and reflects and assessment for the 1990 and 1992 income tax periods of May 13, 1991 and June 7, 1993, respectively. The second Notice of Federal Tax Lien was recorded on October 28, 1996, and reflects an assessment for the 1995 income tax period, with an assessment date of May 20, 1996. The third Notice of Federal Tax Lien was filed on April 28, 2003 for the tax period 1992 with an assessment date of June 7, 1993.

On January 28, 2005, the Debtors filed for Chapter 7 bankruptcy protection. The Debtors received their discharge on May 24, 2005, and then converted the case to a proceeding under Chapter 12 on September 20, 2005. On or about February 13, 2006, the IRS filed its First Amended Proof of Claim which reflects a secured claim of $109,491.78, an unsecured priority claim of $330.30, and a general unsecured claim of $569.69 as of January 28, 2005. The Debtors assert in their Chapter 12 Plan that the IRS' secured claim for the Debtors' 1992 income taxes, in the amount of $35,001.22, is barred by the statute of limitations and does not need to be provided for in their Chapter 12 plan. The IRS filed an objection to confirmation of the Debtors' Chapter 12 plan on March 10, 2006.

**II. STANDARD FOR SUMMARY JUDGMENT**

3

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[2] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6] In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

If the movant carries this initial burden, the nonmovant who would bear the burden of persuasion at trial may not simply rest upon his pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[8] To accomplish this,

---

[2]Fed. R. Civ. P. 56(c). Fed. R. Civ. P. 56(c) is made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7056.

[3]*Lifewise Master Funding v. Telebank,* 374 F.3d 917, 927 (10th Cir. 2004); *Loper v. Loper (In re Loper),* 329 B.R. 704, 706 (10th Cir. BAP 2005).

[4]*Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[5]*Id.* (citing *Anderson,* 477 U.S. at 248).

[6]*Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

[7]*Id.* (citing *Celotex,* 477 U.S. at 325).

[8]*Id.* (citing Fed. R. Civ. P. 56(e)).

4

sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[9] Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[10]

### III. CONCLUSIONS OF LAW

The issue before the Court is whether the IRS is barred from collecting the Debtors 1992 tax liabilities due to a 10-year statute of limitations. Pursuant to 26 U.S.C. § 6502(a), collections on federal income taxes are generally limited to 10 years from the date of assessment of the tax by the IRS. Because the taxes at issue in this case were assessed on June 7, 1993, the IRS would be barred from attempting to collect those taxes beyond June 7, 2003, absent some tolling of the limitations period.

Congress passed the Internal Revenue Service Restructuring and Reform Act of 1998.[11] Under § 3462(b) of that act, the IRS was prohibited from levying on a taxpayer's property during the time an offer in compromise was pending, and, in the event of a rejection, during the pendency of any appeal.[12] This provision applied to all offers in compromise pending on or made after December 31, 1999. In addition to the prohibition against levying on a taxpayer's property while an offer in compromise is pending, 26 U.S.C. § 6331(k) also contains a cross-reference to 26 U.S.C.

---

[9] *Diaz v. Paul J. Kennedy Law Firm,* 289 F.3d 671, 675 (10th Cir. 2002).

[10] *Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[11] Public Law 105-206, 112 Stat. 685.

[12] Public Law 105-206 [H.R. 2676] July 22, 1998.

5

§ 6331(i)(5), which provides that the statute of limitations for levying on a taxpayer's property shall be suspended for the period during which the IRS is prohibited from making such a levy.

Congress later enacted the Community Renewal Tax Relief Act of 2000, which amended portions of the 1998 Reform Act. One amendment, effective December 21, 2000, eliminated the suspension of the statute of limitations by striking the cross-reference to subsection (i)(5) from 26 U.S.C. § 6331(k)(3). On March 9, 2002, Congress enacted the Job Creation and Worker Assistance Act of 2002, which reinstated the suspension provision of the statute of limitations in 26 U.S.C. § 6331(k).

Both parties agree that the various acts by Congress relating to the suspension of the statute of limitations requires the Court to compute these periods separately to determine the statute of limitations period regarding the Debtors' 1992 tax liability. With the exception of the time period between the effective date of the Community Renewal Tax Relief Act of 2000 and the Job Creation and Worker Assistance Act of 2002, the parties agree that the statute of limitations was tolled while the OIC was pending and during any appeal taken of the rejection of the OIC. What the parties do not agree on is whether the record shows that, for purposes of summary judgment, the Debtors appealed the rejection of the OIC.

According to the position taken by the IRS, that the Debtors did in fact appeal the rejection of the OIC, the statute of limitations was tolled from October 25, 2000 (the date the OIC was submitted) until December 20, 2000 (the day prior to the effective date of the Community Renewal Tax Relief Act of 2000), for a total of 57 days. The statute of limitations then began to run again on December 21, 2000 until March 8, 2002 (the effective date of the Job Creation and Worker Assistance Act of 2002). The statute of limitations was again tolled from March 9, 2002 until

6

January 15, 2004 when the appeal was rejected by the IRS. This results in the statute of limitations being tolled a combined 735 days, or 2 years and 5 days. Therefore, according to the IRS, the statute of limitations for collecting the Debtors 1992 income taxes, which were assessed by the IRS on June 7, 1993, had been extended from June 7, 2003 to June 12, 2005.

The Debtors filed for Chapter 7 bankruptcy on January 28, 2005 and, pursuant to 26 U.S.C. § 6503(b) and (h), the statute of limitations is suspended during bankruptcy proceedings, and for an additional 6 months thereafter. Thus, if the Court adopts the IRS's position, the statute of limitations has not yet expired on the collection of the 1992 taxes.

The Debtors do not dispute any of the law or the calculations provided by the IRS in its summary judgment motion, but instead argue that there was never any appeal of the rejection of the OIC, and that the statute of limitations began to run on January 19, 2001, when the OIC was originally rejected. This would have resulted in the statute of limitations expiring prior to the Debtors filing for bankruptcy protection. Therefore, the only issue to be decided by this Court at this time is whether there is a question of fact as to whether the Debtors appealed the rejection of the OIC. The Court finds, based upon the evidence submitted with the summary judgment briefs, that there is no genuine issue of fact remaining, and that the Debtors did in fact appeal the rejection of the OIC.

"A party opposing a properly supported motion for summary judgment must offer evidence, in admissible form, of specific facts, Fed. R. Civ. P. 56(e), sufficient to raise a 'genuine issue of material fact.'"[13] "The mere existence of a scintilla of evidence in support of the plaintiff's position

---

[13]*Biester v. Midwest Health Services, Inc.,* 77 F.3d 1264, 1266 (10th Cir. 1996) (citing *Anderson.,* 477 U.S. at 247-48 ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment")).

7

will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[14] "In essence, the inquiry for the Court is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"[15]

The evidence produced by the IRS in support of its motion for summary judgment includes a letter from the attorney representing the Debtors in their dealings with the IRS dated January 29, 2001 that specifically initiated the appeals process, as well as a letter dated January 15, 2004 signed by the Appeals Team Manager from the Wichita Appeals Office of the IRS rejecting the appeal. In addition, the IRS has submitted a sworn affidavit attesting to the fact that the documents submitted are true and accurate copies of documents contained in the OIC file of the Debtors with the IRS.

To counter the substantial evidence that there was an appeal of the rejection of the OIC, the Debtors rely solely on a tax transcript received by Debtors' counsel on March 22, 2006, that fails to show any appeal being docketed with the IRS.[16] Although the appeal does not appear on the tax transcript, the Debtors fail to provide any evidence to support their contention that if the appeal is not on the transcript, it was never received and processed by the IRS. In addition, the Debtors provide no direct evidence, through affidavits of the Debtors or otherwise, to show that they did not appeal the rejection of the OIC. The IRS has produced extremely compelling evidence that an appeal took place, and the Court finds that no reasonable jury could find that the evidence presented

---

[14] *Anderson.,* 477 U.S. at 252.

[15] *Biester*, 77 F.3d at 1266 (quoting *Anderson,* 477 U.S. at 251-52).

[16] Although not critical to this Court's analysis in this matter, the Court notes that the tax transcript was not received by counsel for the Debtors until March 22, 2006, which was approximately 14 months after they filed their bankruptcy petition and six months after the case was converted to a Chapter 12 proceeding. Based on the timing of the receipt of the tax transcript, it is clear that the Debtors did not rely on the transcript when deciding when to file their bankruptcy petition and, thus, were not harmed by the failure of the appeal to appear on the transcript.

8

by the Debtors would rebut that evidence. As referenced by the *Biester* court, the evidence submitted in connection with this case "is so one-sided that [the IRS] must prevail as a matter of law." Therefore, summary judgment is appropriate in favor of the IRS.

## IV. CONCLUSION

Despite the Debtors attempt to claim otherwise, the Court finds that the Debtors did file an appeal of the rejection of their OIC. That filing of the OIC and the resulting appeal, combined with the filing of the current bankruptcy case, tolled the statute of limitations for collection of the Debtors' 1992 income taxes. As a result, the statute of limitations for collecting the 1992 income taxes has not yet expired. Because the IRS has a secured claim for the 1992 taxes, and is not barred from attempting to collect those taxes, the Debtors' Chapter 12 Plan must provide for payment of the 1992 taxes.

The IRS has also objected to the Debtors' plan because it fails to provide payment of the IRS' priority claim in the amount of $330.30. The Debtors do not contest this in their response to the summary judgment brief, and the Court finds that the Debtors must also include this priority claim in their plan.

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Motion for Summary Judgment filed on behalf of the United States of America (Doc. 116) is granted.

**IT IS FURTHER ORDERED** that the Objection to Confirmation of Plan filed by the United States of America (Doc. 96) is sustained. The Debtors will be required to submit an amended plan that provides for payment in full secured claim of the Internal Revenue Service in the amount of $109,491.78 plus any accrued interest. In addition, the Debtors must also provide for payment of the Internal Revenue Service's priority claim in the amount of $330.30.

9

###